Good morning, Illinois Appellate Court, 1st District. Court is now in session, the 4th Division, the Honorable Justice Bertina Lampkin presiding, case number 13-1973, People v. Robert Hill. Good morning, everyone. I'd like the parties first to identify themselves. And for the Appellant, you're going to have 15 minutes. We may not hold you to that, but I want you to tell me if you're going to reserve some time for rebuttal. So if everyone could identify themselves for the record. Assistant State's Attorney Phyllis Warren, on behalf of the people of the state of Illinois. Good morning, Your Honors, Counsel. Good morning. Good morning, Counsel. Joshua Tepfer, T-E-P-F-E-R, for Robert Hill, who should be present on the Zoom as well. Thank you, Counsel. Are you going to reserve some time for rebuttal? Your Honor, just to clarify, I'm not sure who the Appellant is in your mind. Okay, now that is a question that's at issue here, isn't it? So what we'll do is we'll let both of you have, I'll say. What I'm going to ask is for the state, if you will, to go first, because I really, I think the distinction, and I will give both sides a few minutes for rebuttal. My internet is very unstable today, so if I have to go off the screen, it doesn't mean I'm not here. I will still be listening to you. All right, Ms. Warren, you can proceed. Thank you, Your Honors, Counsel. The people maintained that this court has jurisdiction to hear their challenge to the Circuit Court's order dismissing the indictment after hearing on limited remand, and that dismissal of defendant's murder indictment was too extreme of a remedy where defendant did not suffer a prejudicial violation of due process. Regarding jurisdiction, a second notice of appeal was not required where this court explicitly retained jurisdiction when it remanded the cause back to the Circuit Court for the limited purpose of completion of the hearing on the motion to dismiss the indictment. Initially, there's no need, as counsel suggests, to appoint new counsel or evaluate his effectiveness regarding this jurisdictional issue, although counsel initially agreed that jurisdiction was proper, but now submits that he didn't recognize the lack of jurisdiction. And this is because case law is clear. Jurisdiction cannot be waived or stipulated to by the parties. It's also clear that this court acquired jurisdiction over this appeal when defendant filed a notice of appeal on May 16, 2013, after he was sentenced in this case. One of the issues raised by defendant on direct appeal was the Circuit Court's denial of defendant's motion to dismiss an indictment. When assessing that claim, this court determined that the Circuit Court had improperly cut short the hearing on defendant's motion to dismiss the indictment based on an alleged cooperation agreement with him and the Sheriff's Police Department, because the Circuit Court erroneously assumed there could be no merit to the argument simply because the state's attorney's office was not involved. When issues on appeal have not been fully developed in the trial court, Rule 615B2 empowers the appellate court to remand a cause for a hearing on a particular matter while retaining jurisdiction. Here, this court remanded the cause for the limited purpose of completion of the hearing while explicitly retaining jurisdiction, which was a proper exercise of its authority under Rule 615B2. Thus, the second notice of appeal was not required. This conclusion is apparent when considering this court's jurisdiction to review the Circuit Court's ruling had it denied the motion. Given the plain and unambiguous language of Rule 23, defendant would not have been expected to file another notice of appeal, and we rightfully believe the same applies to the people. Perhaps this is why defendant initially took the position that jurisdiction was proper. To find otherwise would be to set up one method to challenge the Circuit Court's ruling for defendant and another for the people, and surely that's not what this court intended to do. Even if a second notice of appeal was necessary, this court may exercise its constitutional authority under Section 6, Article 6 of the Illinois Constitution and review the Circuit Court's ruling on remand, because it's necessary to complete its resolution of defendant's direct appeal. Lastly, while Rule 604A allows for the people to appeal from certain non-final judgment and orders, this rule allowing for interim or interlocutory appeals has no application here, where the people already fully prosecuted the case, resulting in defendant's conviction, and where this court explicitly retained jurisdiction. Regarding the remedy, in the Rule 23, this court stated that the people's challenge to dismissal the indictment as too severe a remedy was premature, but that in the Rule 23 went on to mandate dismissal if after completion of the hearing, the Circuit Court determined there was a cooperation agreement. On limited remand, the Circuit Court only had authority to engage in fact-finding. It had no discretion as to the proper remedy. While the people do not agree with the Circuit Court's finding about the existence of a cooperation agreement, we do not challenge it, as we recognize that such a finding was not against the manifest way to the evidence. Our challenge here is to the dismissal of the indictment is too extreme of a remedy, where defendant did not suffer prejudicial violation of due process. Can I ask a question? Yes, Your Honor. Let me see if I understand. Is your issue that it's not so much that there was an agreement, but as to the substance and the content of the agreement? Because it appears that you're saying that, you know, now you say that there was an agreement, but then again, at the same time, you're saying that there wasn't. So what is it that you're really contesting here? Was there an agreement, or is it the substance of the agreement itself? Your Honor, we don't agree with the court's finding that there was an agreement, but we recognize that that finding is not against the manifest way to the evidence. Our challenge is to the remedy, and part of when considering the remedy, it's the Pinsky directs the court to look at whether or not there was detrimental reliance on the agreement resulting in constitutional consequences. So, the content of the agreement, and the circumstances surrounding it, as well as the constitutional consequences suffered figure into the remedy. So, we're not contesting. I'm sorry. Please no no please go ahead. So, we're not contesting the court's finding that there was an agreement. We're not contesting that that's against the manifest way to the evidence. We're contesting the remedy of it as too extreme, because defendant here did not detrimentally rely on it, resulting in constitutional consequences at the level of Pinsky. And that's what our challenge is to. May I continue or there's. Absolutely. I had a question, or a statement, I apologize, just as Lincoln of Miss Warren, would you not agree, however, that the mandate from the appellate court directed the trial court to impose the remedy that the trial court imposed. That is correct your honor that we do agree that there was a mandate to impose that remedy. However, there was some imprecise and respectfully contradictory language in the rule 23 in that rule 23, this court, or a different panel but this court recognized that we were arguing in the direct appeal that dismissal was too extreme of a remedy, and the court, the rule 23 excuse me, stated, well that's arguments to the premature, but then contradictory contradictory went on to mandate dismissal. So we feel that this is now, that was actually my first point that this issue is right for this court to address, and the law of the case doctrine as counsel suggested in his reply brief doesn't serve as a dismissal to challenge the remedy, because the appropriate remedy hasn't been previously decided. Thank you. Next, should I continue. Oh, absolutely. Thank you. Additionally, in addition to the law the case tractor not serving as a bar, and the fact that we didn't forfeit the issue because it wasn't right. Additionally, the prosecutors recognition in the circuit court of this court's mandate to dismiss the indictment cannot be construed as acquiescence of the remedy mandated here dismissal the remedy was too extreme, excuse me. Here dismissal was too extreme of a remedy where defendant did not reasonably rely on any non prosecution promise made by the sheriff's office to his prejudice, because he knew such a promise was not in the sheriff's office independent control. He knew the charging decision rested solely with the state's attorney's office, and that the sheriff's office lacks any authority, when it came to the charging decision, because the investigator clearly told him this during the October 29 2007 interview. Before there was any discussion about the polygraph. The sheriff's investigator told defendant that he would have to call the state's attorney's office up to find out whether or not they wanted to charge defendant. And this statement about the state's attorney's office role in the criminal investigation was not a one time isolated comment. The sheriff's investigator told the defendant for additional times, he would bring defendant story denying any involvement to the state's attorney to be weighed against the other witnesses version. When the state's attorney was deciding whether or not to charge the defendant. When the investigator first began discussing the polygraph as a method to prove defendants honesty, he told defendant, and as quick as it's over, and everybody tells me you're good to go. I'll personally drive you home. After the polygraph, the investigator again spoke to the defendant, and again emphasize the charging decision rested with the state's attorney's office defendant never once asserted that that was not his understanding of who had the authority to make the because such promise was not in the sheriff's office independent control. This is drastically different from what occurred at the Pinsky, where defendant was never informed by the Illinois State Police Sergeant, that the police lack independent control over the charging decision. Second, defendant here did not detrimentally rely on any non prosecution promise, resulting in constitutional consequences detrimental reliance required to enforce an unauthorized cooperation agreement must be more than simply providing the requested or And nothing like that occurred here. Here, defendants participation in a polygraph examination. During the course of a pre indictment interview, in which defendant already knowingly and voluntarily waived his right of self incrimination and denied in any involvement, did not carry with it the same level of constitutional consequences as in Pinsky. Defendant here was not compelled to incriminate himself. He failed to provide any evidence the prosecution could use against him. He was not required to engage in any criminal activities thus placing him in potential harm's way. Thirdly, unlike the Pinsky, the government's conduct here didn't shock the conscience or violate the decencies of civilized society. Here, defendant who did not incriminate himself during the participation in the polygraph exam was arrested one month after the custodial interview. And, excuse me, he knew that such an arrest was a possibility, as he had been informed the decision to charge rested solely with the state's attorney's office. And the investigators also informed him that the case was being continued, that he shouldn't leave town because the investigation was ongoing. This is dramatically different than what occurred the government's conduct in Stupinsky. We're in reasonable reliance of the non prosecution agreement entered into by the police, the defendant incriminated himself in the process of fulfilling his obligations, yet one year later was indicted. Unlike Stupinsky, the totality of the circumstances surrounding the government's conduct does not offend basic tenets of fair play and justice, such that dismissal of the indictment is required. Here, your honors, defendant was arrested by police and brought to a police station for an interview because other witnesses implicated him in the murder and attempt murder. He was advised of his Miranda warnings, he knowingly and voluntarily waived them and asserted he was not involved in the crimes, despite being confronted with other witnesses statements implicating him. The investigators informed him the decision to charge him rested solely with the state's attorney's office, and they would present his denial, along with the other witnesses statements to the state's attorney's office. The defendant took the polygraph in an attempt to convince the investigator that he was telling the truth about his lack of involvement in the murders, not because he reasonably relied on a non prosecution promise from the sheriff investigator. He even told the polygraph examiner, I'm taking the test to clear my name. Your honors, the appropriate remedy here is not to prevent the people from pursuing charges against defendant for his role in these crimes. You shouldn't be allowed to receive immunity from his criminal action, merely because he entered into a non prosecution agreement with the sheriff's office, an agency, he knew, lack the authority and ability to fulfill such an agreement, and where he interview. Defendant's contention that this proposed remedy is no remedy at all, highlights the fact that defendant here did not suffer prejudicial violation of his due process rights by participating in the polygraph exam, and nor are we suggesting by our proposed remedy that the government doesn't have to buy by its agreements and promises. What we're saying is based on the facts of this case, where defendant did not reasonably and detrimentally rely on an officer's non prosecution promise or offer resulting were, it did not result in constitutional consequences, enforcement of an agreement is too extreme a remedy. And this is in line with the Penske. Your honors, it is for these reasons and the reasons stated in the people's briefs that this court should reverse the dismissal the indictment reinstate defendant convictions and sentences and consider the remaining issues of the direct appeal. Thank you. Thank you, Justice race Do you have any further questions. No, not at this time. Justice Martin. No justice not at this time. All right, thank you counsel you may proceed. Thank you, your honors. I will briefly address the jurisdictional question first and then I will move on to the substantive issue. Your honors, simply put, there is no jurisdiction. The simplest way I can think of saying that is Mr Hill does not want to be here. Mr Hill is not the appellant. Your honors determine the state should go first in this case. The circuit court when it reached this decision repeatedly recognize that the state would need to decide if it would appeal its order. The state itself repeatedly in the circuit court reference below that they would need to, for example, consult with its appellate division as to whether it would need to file a notice of appeal, or whether it would further appeal this order. This occurred over and over and over again in the record. The state is the appellant here, Mr Hill is entirely satisfied with what happened in the circuit court, the case was over from his perspective. It was dismissed, he does not want to be here. When the state is the appellant rule 604 a and rule 606 a control and apply. Indeed, this is a circumstance a dismissal of the indictment that is specifically called for in rule 604 a which delineates exactly when the state can appeal. When rule 604 a applies. The state must file a notice of appeal within 30 days. That is what confers jurisdiction. They didn't. There is no jurisdiction. When this, when this court wrote that it retained jurisdiction to consider quote other issues. That was when Robert Hill was the appellant. Robert Hill is not the appellant here, Robert Hill one. He does not want to be here. So, if the state is seeking something different from what happened in the circuit court below. They were the ones who wanted to challenge it. They were the ones who needed to find to file a notice of appeal and get back to this court should be under a different appellate case number, the other issues that the court decided it did not need to rule on until after further proceedings were held on the motion to dismiss the indictment. Those are mooted. Mr. Hill does not need this court to adjudicate them. Can I ask you a question. So, based on their argument, the inference appears to be that because of this court's previous decision that this is an ongoing appeal, and went back down the results happen whatever they happen at the trial level and now they're back up based on this court's previous appeal, that's, that's appears to be their argument, and they're drawing an inference from the language in rule 23 that was previously decided by this court. Can you address that. What I would say is it's it's not ongoing, it is a different case. This court retained jurisdiction and the ongoing appeal the ongoing appeal the other ongoing appeal is the other issues that would need to be adjudicated by Mr. Hill by raised by Mr. Hill and responded to by the state. Mr. Hill does not want those addressed anymore. He does not need those addressed anymore he received the exact remedy that he wanted. So it isn't an ongoing appeal anymore when, when a case is dismissed when the indictment is dismissed as it was in the circuit court, the case is over. Mr. Hill is free. He has been free for three and a half years. There is no ongoing appeal anymore. Thank you. I'll turn to the substance of question if your honors disagree with this position and there you determine there is jurisdiction. I also do believe that this issue is extremely straightforward. As background and paragraph 29 as, as a justice Martin wrote indicated in the state acknowledged. If the trial court finds that the defendant has established an enforceable cooperation agreement, not to arrest or prosecute him on the charges set forth in the indictment, and that agreement was breached by the state. The court shall dismiss the indictment. You heard the state acknowledge that that was the mandate in this court today they repeatedly acknowledged it below. And that is in paragraph 29 of the decision. Again, you heard the state acknowledge again that they are not claiming that the trial courts finding of an existence of an agreement was against the manifest weight of the evidence. I think it take with one second let's highlight exactly what the agreement was just to spell it out briefly. The agreement as interpreted by the lower court, which the state does not challenge was that if Mr. Hill waived his Fifth Amendment right and took a polygraph examination, and if he passed that polygraph examination, he would get immunity. He'll did waive that Fifth Amendment right. He did pass that polygraph examination, he lived up to his end of the bargain. Now it's the state's turn to live up to their end, their end is immunity. The state's entire position in this appeal is that it is too severe of a remedy. There are a number of problems with that position. And the first problem with that position is in what the state seems to be not able to grasp is that the remedy of this case is not a remedy, but what they're saying is that they should be permitted to breach the agreement, this simple as that. That was their end immunity. That is what they want to breach. That is problem number one. Problem number two is that the state is now saying that the right remedy is not to use any statements during the interrogation. And as the state acknowledged that's really not a remedy at all in this case because they didn't use any statements in the prosecution nor could they because they were all during the interrogation because they were all exculpatory. So what is the state actually giving up? How is that an agreement? They acknowledge there's an agreement. An agreement requires each side to have consideration, to give something up. The state is now saying that they don't have to give anything up and it is still an agreement. That is a big problem because they are not giving anything up. That is problem number two. Problem number three, which the state frankly I think washed over quite a bit, is this is not a waiver solely. This is an affirmative acquiescence over and over and over again in the trial record that not only was this remedy of dismissal mandated, but that this remedy of dismissal was proper. Look at the record. And these are just a couple of the examples that are all laid out in my briefing. But in sub two of the record, if you look at page 15 and 16, the state says it is the state's position that if there is a contract, the state has to be held to it. On page 115 of the same record, the state goes further. It says it makes sense that if there is an agreement, the state must be held to it. On page 182 and 183, the state goes further. They say, quote, due process requires the state be held to its agreement. Same page of that record. The state says the court uses contract principles. And the reason is, quote, it is not right. It is not fair for the state or the police to enter into a contract with the defendant and have a defendant perform the contract, garner information, put the defendant in a worse off position than he would have been, and not stand by it. That's wrong. And the Illinois Supreme Court spelled that out. On and on, over and over in the record, the state acknowledged that dismissal remedy was ordered by this court, mandated by this court, and it is the fair remedy in this case. And that's true. That's problem number three. Problem number four, those are three big problems. Problem number four is the biggest problem. Problem number four is literally what the state is asking this court to find is not just that it can breach the agreement, but that the circuit court abused its discretion in not allowing the state to breach the agreement. Let's be very, very clear. The trial court did exercise its discretion, despite all of those comments by the state over and over again that this was the proper remedy. At the motion to reconsider, at the very first time when the state changed its position and said, let's have a different remedy, the trial court entertained that. They said, well, I think it's mandated, but tell me what you're thinking. Tell me what you think the appropriate remedy should be. And the court said, okay, I'm disagreeing with you, I'm exercising my discretion, and the appropriate remedy is dismissal. Of course, that's not an abuse of discretion. In fact, it flies in the face of Stapinski and Starks and common sense to say otherwise. And let's go through the crucial cases in this case, which are Stapinski and Starks. Here is how the Illinois Supreme Court in Stapinski describes Starks from the 19, I think it's from 1985. This is what Stapinski says. It says, we held in Starks that due process requires the state to honor a cooperation agreement when a defendant fully performs, and if the state fails to honor the agreement, quote, dismissal of charges is proper. That is what is conscious shocking or offends the notions of decency of a civilized society. The idea that the state can enter into an agreement and unilaterally breach it. That's what's conscious shocking. That's exactly what the state says in Starks and Stapinski. That is the due process violation. Now, Starks dealt with the identical substantive agreement. Starks takes on the issue of whether a state is bound by an immunity agreement based on a past polygraph examination. And here's what Starks said about that at 449 of its decision. Quote, the prosecution must honor the terms of agreements it makes with defendants. To dispute the validity of this precept would surely result in the total nullification of the bargaining system between the prosecution and the defense. Therefore, this court believes that if the prosecution did make an agreement with the defendant, it must abide by its agreement in this case. The state's agreement was immunity. It is bound by it. The consideration or detrimental reliance that the state repeatedly refers to that Mr. Hill engaged into was the waiver of his Fifth Amendment right. The state, he did waive it when he talked to the police. That's fine. He waived it again when he took the polygraph. You can exercise your Fifth Amendment rights when you're talking to the police anytime you want. You can stop that waiver. What's particularly noteworthy, if you look at the polygraph exam, he was given it again before he took the polygraph exam, and he waived it again. So he could take the polygraph exam and passed it. That was his detrimental reliance. That is the serious constitutional right that he gave up in this case. Now, turning to Stopinski, because Starks was when the prosecution was in on the agreement. And this court recognized in this prior appeal in 2016 that Stopinski says whether it is the prosecution or police, it doesn't matter. The state is bound by the agreement. Here's what it says in paragraph 55 of Stopinski. We cannot say that the trial court abused its discretion by granting defendants motion to dismiss the charge. Whether or not the cooperation agreement was, quote, valid in the sense that it was approved by the state's attorney, quote, is not important. That's what the state said. The entire — I mean, that's what Stopinski, the Illinois Supreme Court, said. The entire premise of the state's argument that Mr. Hill knew or should have known or was told that he can't rely on the law enforcement promise is entirely upended by Stopinski, which said, yes, he can. He can rely on that. It is not important who made the agreement. So that makes Stopinski, combined with Starks, entirely binding. It is certainly not an abuse of discretion by a lower court to dismiss an indictment and not allow the states to breach its agreement in this case. But there is even one more fact. There's even one more reason why Stopinski and Starks is entirely controlled. Because in Stopinski, the state asked this court explicitly to overrule Starks and say a more appropriate remedy in these situations is suppression of a statement. And that's exactly what the state is asking you to do here. Even where it's a fruitless exercise or even where it has no real meaning and they didn't rely on it, a statement that doesn't exist in any way, that's still what the state is saying is the appropriate remedy here, and it's exactly what the state asked Stopinski to. And this is what Stopinski said in response to that very argument in paragraph 45, quote, we disagree with the state's position. And it then goes on to explain why it disagrees with that position. And it comes down to contract law principles and cooperation immunity agreements. And all that is about is it's not about statements that are made, it's about the right immunity is the right not to be hailed into court at all. Stopinski, paragraph 52 says, based on these principles, we find the defendant's substantive due process rights were violated when the state breached the agreement. The trial court did not use its discretion in granting defendants motion to dismiss. Stopinski and Starks 100% control this issue. Your Honor, the state maintains that there is some sort of contradiction in paragraph 28 and paragraph 29 of this court's prior holding. There is not. This court mandate could not be more clear in paragraph 29. I already read it to you. It said this court shall dismiss the indictment if the state breaches the breach, if there is an agreement, and Mr. Hill lived up to and is a barter. To the extent paragraph 28 said that the argument about the appropriate remedy is premature. What this court meant was that you didn't know if there was an immunity agreement. That's what you didn't reach. You didn't know if there was an agreement at all. There had not been a full litigation. There may have been an agreement that if he took a polygraph that they wouldn't use anything that happened during the interrogation. That's why you remanded to find out what the agreement was. We remanded down. The Judge Boyd found that there is an immunity. There was a cooperation immunity agreement. The remedy is part of the agreement. The state has come up here in its briefs and in this court and said that was not against the manifest weight of the evidence. That finding was not. It is as simple as that. Your Honors, when the state arrested Robert Hill in November of 2007, it breached its agreement made with him one month earlier. That issue is not even in dispute. The result was Robert Hill, who's here, spent the next 10 years in prison. He's been out of custody since December 15, 2017. He's been living his life for three and a half years, totally law abiding. The state's asking this court now to order that it can breach the agreement again. It's actually asking this court to find that the lower court abused its discretion and not letting them breach the agreement. Sure, this court should reject that request and it should affirm the circuit court. There's any questions? Justice Reyes, any questions? No, no questions. Thank you. Justice Martin. No questions. Thank you, Justice. All right, thank you. Miss Warren, you can respond. Thank you, Your Honors. First of all, defendant's desire and his wants don't figure into jurisdiction. What figures into jurisdiction is whether or not this court, a notice of appeal was filed, which it was, whether or not there was a retention of jurisdiction because the trial court's record was incomplete. It was. And what counsel is suggesting is a separate set of method of appealing the circuit court's decision, had it denied it, it denied the motion for himself and for the state. And that's surely not what this court intended. And we reasonably believe, and rightfully so, that the same method of challenging this judgment or this ruling applied to the state as to the people. Regarding Starks, Your Honor, Starks is drastically different or dramatically different than what happened in this case. In this case, excuse me, Your Honor, in contrast to this case in Starks, it was the prosecutor's office that was handling the defendant already indicted in case. And it was the same government body that entered into the agreement with the defendant. Unlike the defendant here, the defendant in Starks reasonably relied on the assistant state's attorney's non-prosecution promise because such promise was in that state's attorney's office independent control. More importantly, the Starks defendant had already been indicted, was in jail, and was compelled to waive his Fifth Amendment right of self-incrimination in order to participate in the polygraph. The defendant in Starks then detrimentally relied on the prosecutor's office to, excuse me, the prosecutor's offer to his prejudice. Here, the defendant's participation in the polygraph took place during the course of a pre-indictment interview in which he knowingly and voluntarily waived his Fifth Amendment right. So the same level of compulsion in Starks was not present. Further, the state's position that this remedy is too extreme is completely in line with Stupinsky. Stupinsky doesn't hold that an unauthorized promise about a cooperation agreement, I'm sorry if I could start over. Stupinsky court did not hold that a police officer can unilaterally bind the state to an agreement with the defendant. Stupinsky held that an officer's promise reasonably relied upon to his prejudice is enforceable. And that's paragraph 55 of the Stupinsky decision. And Stupinsky, in so finding, cited to People v. CSA, a California court, in which it talked about detrimental reliance and constitutional consequences. Here, there was not the same level of constitutional consequences that occurred in Stupinsky. And it is for these reasons that the state rightfully believes that this remedy was too extreme. Your Honors, if there's no questions, I don't have anything further. I have no questions. Thank you. Thank you. I have no question. As little minutes. I'm having trouble hearing. I'm sorry. I know my internet is going in and out. I said I'm going to give you a couple of questions, and I'm not implying who is the affluent, or the affiliate Mr. That's just for your information council. I'm giving you a couple of minutes anyway. Fair enough. For overstating that position. I just briefly on the jurisdictional question and I don't need much time but I'm the to address the state's point about the Illinois Constitution somehow conferring jurisdiction to because it's necessary to complete its resolution of the defendants direct appeal it's not And needless to say, and people be stuve I believe it is st EU be excited in my brief 66 Illinois second 174, it makes it very clear that this constitutional provision is not some sort of catch all when the state does when any party does not comply with the jurisdictional And to the extent that that there suggests that there was a full prosecution, the court in hill into in this case six years ago vacated the conviction. The conviction was vacated and it was only to be reinstated if there was not a cooperation immunity agreement that was breached. It wasn't reinstated judge Boyd found that it wasn't. So, the idea that there's a fully, we're pre trial here at this point we're pre anything. So the idea of that somehow jurisdiction is is not an issue because of fully prosecuted case has no validity in this instance. The state says that's the Penske relied on this California mid level appellate court case. That's a that's a vast overstatement it cited it once briefly in support of its position, but that California case CSA actually supports, Mr hills position as well. And specifically says it's a CSA Penske cited for the idea that quote and unauthorized promise may be enforced on due process grounds. If a defendant's reliance on that promise quote has constitutional consequences. As I've repeatedly said the constitutional consequence was the waiver of this Fifth Amendment right not to talk to the police to have counsel to right to silence, not to take a polygraph examination, which was in full effect throughout that custodial interrogation polygraph examination that he could assert anytime he wanted to, that he was reminded that he could assert anytime he wanted to during the polygraph examination himself that he signed his name to waving. That is the constitutional consequence doesn't have anything to do whether he made incriminating statements or not. He waived a very important Fifth Amendment right that we all have, and that CSA stands for that as well. Your Honors with that unless you have any other questions we would ask you to affirm the circuit court and let Mr Hill go on with this. Right, Judge Reyes anything further. Nothing further. Thank you. That's Justice Martin, nothing for me justice. All right, thank you. I have to say this is an interesting case. And you've given us some very interesting arguments we will have a decision, shortly. Thank you very much.